In re SOUTHEASTERN EMERGENCY HEALTHCARE, P.C., Debtor.

HEALTHCORP, INC., Movant,

v.

SOUTHEASTERN EMERGENCY HEALTHCARE, P.C., Respondent.

Bankruptcy No. 87–05869–JB.

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

March 22, 1988.

Neil Gordon and David Robinson, Macey, Wilensky, Cohen, Wittner & Kessler, Atlanta, Ga., for debtor.

Abby Martin, Alston & Bird, Atlanta, Ga., for Healthcorp, Inc.

## ORDER

STACEY W. COTTON, Bankruptcy Judge.

Before the court is the motion of Healthcorp., Inc. ("movant") for relief from the automatic stay and to require segregation and accounting.

## FINDINGS OF FACT

On November 29, 1983, the debtor, Southeastern Emergency Healthcare, P.C., executed a purchase money note payable to movant in the principal amount of $205,-000.00. The parties entered into a security agreement on September 30, 1983 to provide additional security for the repayment of this note which provided as follows:

Debtor does hereby grant, bargain, sell, convey, assign and transfer the property described hereinbelow, together with all replacements and accessions thereto (hereinafter collectively referred to as the "Collateral"):

All those items of personal property located on the premises of East Cobb Medical and Emergency Care Center 1230 Johnson Ferry Road, Suite A10, Marietta, Georgia 30067, which items of personal property are owned by Debtor.

Movant subsequently filed a UCC financing statement on December 21, 1983 which covered the following types of property:

All those items of personal property located on the premises of East Cobb Medical and Emergency Care Clinic, 1230 Johnson Ferry Road, Suite A–10, Marietta, Georgia 30067.

The financing statement included a box to be checked and completed where applicable if proceeds were covered by the financing statement; however, this box was not checked.

On July 31, 1987, debtor filed a Chapter 11 petition. Movant asserts an interest in all items of personal property located on debtor's premises, including accounts receivable. The parties stipulated at the hearing on this matter that all collateral except accounts receivable had been surrendered to a superior lienholder. Accordingly, the only assets that are the subject of this motion for relief from stay are accounts receivable. Movant contends that, even if the stay motion is denied, the accounts receivable constitute cash collateral for which debtor should be required to segregate and account. The issue before the court is whether the language of this financing statement and security agreement includes debtor's accounts receivable.

## CONCLUSIONS OF LAW

Because the UCC contemplates notice filing, as a general rule a broad description of the collateral in the financing statement and security agreement is sufficient to perfect a security interest provided that it is possible to reasonably identify the items subject to the security interest. *In re H.L. Bennett Co.*, 588 F.2d 389, 391–92 (3rd Cir.1978); *United States v. Crittenden*, 563 F.2d 678, 682–83 (5th Cir.1977); *Johnson v. First National Bank of Howard (In re Fuqua)*, 461 F.2d 1186, 1187 (10th Cir.1972). However, this general rule has its limits. In this regard, O.C.G.A. Section 11–9–402(1) provides:

A financing statement is sufficient if it gives the names of the debtor and the secured party, is signed by the debtor, gives an address of the secured party from which information concerning the security interest may be obtained, gives a mailing address of the debtor, contains a statement indicating the *types*, or de-

scribing the *items,* of collateral ... (emphasis added).

That section requires that the financing statement identify the collateral by either providing the *types* of or a description of the *items* intended to be covered.

Article 9 of the UCC as adopted in Georgia lists several broad categories of personal property, such as consumer goods, equipment, farm products, inventory, *account,* and general intangibles. Account, which would include accounts receivable as defined by O.C.G.A. Section 11–9–106, is a category of collateral in which a security interest may be taken.

■ In the instant case, the financing statement language fails to indicate the *types* or describe the *items* of collateral in which a security interest was taken. Instead, it only refers to "all those items of personal property" located on debtor's premises. Movant's failure to identify account as a type of collateral intended to be covered by the financing statement does not place third parties on notice that a security interest was taken in accounts receivable.

Similarly, in *In re H.L. Bennett Co., supra,* the Third Circuit considered the following description in a financing statement: "All assets as contained in the security agreement." The court held the description was insufficient and emphasized that a financing statement "which lists collateral *less* specifically than by reference to the categories of personal property contained in Article 9, does not comply with the statutory imperative of identification by 'types.'" *In re H.L. Bennett Co.,* 588 F.2d at 392. (emphasis in original).

In addition to this, the Tenth Circuit in *In re Fuqua, supra,* considered and held insufficient a description in a financing statement of "All Personal Property." That court held that the description did not meet the statutory requirement of indicating the types or items of collateral. *In re Fuqua,* 461 F.2d at 1187–88. *See also Mogul Enterprises, Inc. v. Commercial Credit Business Loans, Inc.,* 92 N.M. 215, 585 P.2d 1096, 1097–98 (N.M.1978) (description in financing statement of "all assets ... re-

gardless of type or description now owned ... or to be bought in the future" held insufficient); *Household Finance Corp. v. Kopel (In re Lehner),* 303 F.Supp. 317, 318–20 (D.Colo.1969) (description in financing statement of "consumer goods" held insufficient).

■ In the present case, the security agreement, like the financing statement, provides that movant has a security interest in "all those items of personal property" located on debtor's premises. However, the security agreement goes further than the financing statement by including "all replacements and accessions thereto." The scope of the security agreement is thereby limited to debtor's personal property and any replacements and accessions. This description does not entail accounts receivable. Thus, like the financing statement, the security agreement fails to place third parties on notice of a possible security interest in accounts receivable. *See American Restaurant Supply Co. v. Wilson,* 371 So.2d 489, 25 UCC Rep. 1159 (Fla. Dist.Ct.App.1979).

In addition, movant failed to check the proceeds box on the financing statement. In not doing this, movant failed to put third parties on notice of a possible security interest in accounts receivable. *In re Platt,* 257 F.Supp. 478, 481–82 (E.D.Pa.1966). In fact, neither the security agreement nor the financing statement indicates that proceeds, such as accounts receivable, were intended to be covered. The court thus concludes that the scope of movant's financing statement and security agreement was limited to physical assets located on debtor's premises and does not include intangible assets such as accounts receivable.

Based on the foregoing, the court determines that movant's financing statement description is too vague and general to meet the statutory requirement that the financing statement at least disclose the *types* or describe the *items* to be covered. As a result, the financing statement fails to provide notice to third parties of a security interest in accounts receivable. The security agreement is similarly lacking in that it

does not contain an adequate description to place third parties on notice that a security interest is taken in accounts receivable.

The only assets that are the subject of this motion are accounts receivable, the parties having stipulated that all other assets have been surrendered to a superior lienholder. Because accounts receivable are not covered by movant's financing statement and security agreement, the motion to lift stay and to require segregation and accounting will be denied. Accordingly, it is

ORDERED that movant's motion for relief from the automatic stay is DENIED and it is

FURTHER ORDERED that movant's motion to require segregation and accounting is DENIED.

IT IS SO ORDERED.