In re SOFTALK PUBLISHING CO., INC., Debtor.

FIRST CITY BANK, Appellant,

v.

The WEBB COMPANY and Curtis B. Danning, Chapter 7 Trustee, Appellees.

Bankruptcy No. LA 84–1631WL.
Adv. No. LA 85–0076.
BAP No. CC–85–1477–MeVAb.

United States Bankruptcy Appellate Panels of the Ninth Circuit.

Argued and Submitted April 16, 1986.

Decided Aug. 8, 1986.

As Amended Aug. 15, 1986.

Jonathan A. Tillman, Saltzburg, Ray and Bergman, Los Angeles, Cal., for appellant.

**524**

Gary E. Klausner, Robinson, Wolas and Diamont, David Gould, Danning, Gill, Gould Joseph & Diamond, Los Angeles, Cal., for appellees.

Before MEYERS, VOLINN and ABRAHAMS, Bankruptcy Judges.

MEYERS, Bankruptcy Judge:

## I

This appeal raises a question of first impression under the California Commercial Code—whether a misidentified description of collateral in a financing statement is sufficient to perfect a lien. The trial court found that the security interest of First City Bank ("First City") was not perfected because its financing statement did not contain any description of the collateral. However, a description of the proceeds was contained in the financing statement. First City contends that this description of "proceeds" should be substituted for the missing description of the "collateral." First City further contends that its use of the word "proceeds" instead of the word "collateral" is a harmless error that did not prevent other parties from being placed on notice of its interest in the collateral.

## II

## FACTS

This is a contest between two sophisticated creditors. First City was the first of these to loan money to the Debtor, Softalk Publishing Co., Inc., when it loaned the Debtor $125,000 on November 3, 1983. The Debtor then executed and delivered a promissory note and a security agreement to First City. The Debtor also signed a financing statement which was recorded with the California Secretary of State on November 16, 1983.

This financing statement stated that First City had a security interest in collateral listed on an attachment. Surprisingly, this attachment contained no description whatsoever of collateral. First City has offered no explanation of why the word "collateral" was not directly defined in the financing statement. However, the word "proceeds" was defined on the attachment as including the following types of property: "inventory, returned merchandise, accounts, accounts receivable, chattel paper, general intangibles, insurance proceeds, documents, money, goods, equipment, instruments or any other tangible or intangible property arising under the sale, lease or other disposition of collateral."

The second creditor to extend credit to the Debtor was the Webb Company ("Webb"). Webb loaned the Debtor $400,-000 and obtained a security interest in the Debtor's accounts receivable, accounts and contract rights as well as their proceeds. Webb filed a financing statement with the California Secretary of State on April 12, 1984, thereby perfecting its security interest.

The Debtor maintained a checking account at First City, from which First City withdrew $78,343.14 on August 17, 1984 to satisfy a debt owed to it. The monies withdrawn were primarily proceeds of the Debtor's accounts receivable which had been commingled with other monies in the account.

The Debtor commenced a Chapter 7 proceeding on August 22, 1984. Thereafter, Webb claimed that its security interest in the withdrawn monies had priority over First City's lien. Consequently, it commenced an adversary proceeding against both First City and the Trustee. Webb obtained a partial summary judgment that the Bank's security interest was unperfected because its financing statement did not contain an adequate description of the collateral.

After a trial, the trial court found that Webb had a superior interest in the money and entered a judgment in Webb's favor for $78,343.14, plus interest. Five days later, First City took a timely appeal.

## III

## DISCUSSION

A. *The Policy of the Uniform Commercial Code*

The principles of liberal construction and notice filing run through the Uniform Com-

mercial Code ("UCC"). These principles were adopted by the California legislature. Cal.Com.Code § 9402(2) and (8), Cal.Com. Code Comment, pp. 158–159 (West 1986). The policy of liberal interpretation was designed to discourage "fanatical and ... refined reading(s) of ... statutory requirements." Cal.Com.Code § 9402(8), Cal.Com. Code Comment, *supra,* at 159.

A liberal construction of the Code does not require that the court disregard its specific provisions. *In re Antekeier,* 6 UCC Rep. 1027, 1030 (W.Mich.1969). The Ninth Circuit Court of Appeals, as well as this Panel, has held that the equitable principles of mistake and reformation do not apply in construing financing statements. *In re Pacific Trencher & Equipment, Inc.,* 735 F.2d 362, 364 (9th Cir.1984), *aff'g In re Pacific Trencher & Equipment, Inc.,* 27 B.R. 167, 170 (9th Cir.BAP 1983).

Financing statements that do not comply with all of the formal requisites of the UCC are effective only if the errors are both minor and are not seriously misleading. Cal.Com.Code § 9402(8). *In re Pacific Trencher & Equipment, Inc., supra,* 735 F.2d at 364. To hold otherwise would be to condemn Article 9 to the status of a vague guideline. Whether any particular transaction creates an interest which secures an obligation would always be a question for judicial determination. *See* 1 Gilmore, Security Interests in Personal Property, § 11.1 at 335 (1965).

### B. *Requisites of a Financing Statement*

The UCC reduces the formal requisites of a financing statement to a minimum. Cal.Com.Code § 9402, Cal.Com.Code Comment, *supra,* at 158; *In the Matter of Munger,* 495 F.2d 511, 512 (9th Cir.1974). There are only three requirements: (1) the signature of the debtor, (2) the addresses of both parties and (3) a description of the collateral by type or item. Cal.Com.Code § 9402, Cal.Com.Code Comment, *supra,* at 158.

The statutory language of the Uniform Commercial Code clearly requires some specificity of description. Collateral must be described in one of two ways—by type or by item. Cal.Com.Code § 9402. Since the UCC has reduced the formal requisites of a financing statement to a minimum, there can be no acceptable excuse for failure to comply with its provisions. *In re Hein,* 20 UCC Rep. 745, 749 (W.Wis.1976).

In the instant case it is undisputed that the collateral was not directly described. Although the financing statement referred the reader to an attachment for a list of collateral, the attachment contained no description of any collateral. Instead the word "proceeds" was defined. First City has not provided this Panel with any explanation of why the financing statement contained no direct description of the collateral.

There have been other instances where financing statements referred to an attached list, which was never filed, for a description of the collateral. In every case the security interest was found to be unperfected. *First Nat. Bank v. Chemical Products, Inc.,* 637 S.W.2d 373, 376 (Mo. App.1982); *J.K. Gill Co. v. Fireside Realty, Inc.,* 499 P.2d 813, 815 (Or.S.Ct.1972); *Trust Co. of Columbus v. Cowart,* 286 S.E.2d 23, 25 (Ga.S.Ct.1982). However, the lack of any direct description of collateral is not dispositive in the instant case because First City contends that its description of proceeds may be substituted for the missing description of collateral.

### C. *Misidentified Description*

It appears that the issue of whether a misidentified description may be used in a financing statement is a question of first impression. First City contends that the use of a misidentified description is a minor error which is not seriously misleading under Cal.Com.Code § 9402(8). We disagree.

Under the UCC the terms "collateral" and "proceeds" are terms of art. "Collateral" is defined as property subject to a security interest. Cal.Com.Code § 9105(1)(c). "Proceeds" is defined as whatever is received upon the sale, ex-

change, collection or other disposition of collateral or proceeds. Cal.Com.Code § 9306(1). Although related, these two terms are not synonymous. The Ninth Circuit Court of Appeals has held that in interpreting California statutes, a federal court cannot omit or add to the plain meaning of the statute. *In re Borba*, 736 F.2d 1317, 1320 (9th Cir.1984); Cal.Civ.Proc.Code § 1858. Thus, we are not free to substitute the term "collateral" for the term "proceeds".

■ If misidentified descriptions are acceptable, there is no reason to describe the property at all. *E.P.G. Computer Services, Inc.*, 20 UCC Rep. 1084, 1089 (S.N.Y. 1970); *See In re Fairway Wholesale, Inc.* 21 UCC Rep. 1429, 1434 (Conn.1977). The very purpose of requiring a description is to separate the property covered from property not covered. *See Mammoth Cave Production Credit Association v. York*, 5 UCC Rep. 11, 16 (Ky.App.1968); *In re Fairway Wholesale, Inc., supra*, 21 UCC Rep. at 1435.[1] Where a financing statement misidentified accounts receivable as "assignment accounts receivable," the Oklahoma Supreme Court limited the security interest only to accounts receivable which were actually assigned. *Georgia-Pacific Corp. v. Lumber Products Co.*, 590 P.2d 661, 664 (Okl.S.Ct.1979). *But see Thorp Com. Corp. v. Northgate Indus., Inc.*, 654 F.2d 1245, 1251 (8th Cir.1981). Thus, at best a misidentified description of a security interest will limit that security interest to only the collateral actually described. *Georgia-Pacific Corp. v. Lumber Products Co., supra*, 590 P.2d at 664.

■ While the use of any misidentified description would probably be seriously misleading under Cal.Com.Code § 9402(8), the description offered by First City is certainly misleading. When collateral is turned into proceeds, its nature is transformed from one type of collateral to another, e.g., from accounts receivable into cash. Hence, an adequate description of the property that constitutes proceeds does not enlighten a prospective creditor as to what kind of property previously had constituted the collateral. *In re E.P.G. Computer Services, Inc., supra*, 20 UCC Rep. at 1089. This is particularly true when the proceeds are commingled with other monies in a bank account.

The test employed in the Ninth Circuit to determine if a description of collateral is seriously misleading is whether it would indicate to an interested third party the possible existence of prior encumbrances on the collateral. *In re Pacific Trencher & Equipment, Inc., supra*, 735 F.2d at 364. It is not determinative that no actual creditor was misled. *In re Thomas*, 466 F.2d 51, 53 (9th Cir.1972). It is enough that a potential creditor could have been misled. *In re Pacific Trencher & Equipment, Inc., supra*, 735 F.2d at 364. Consequently, it is the holding of this Panel that even given the description of proceeds, the failure to provide a description of the collateral was seriously misleading from the standpoint of a potential creditor viewing the records.

Under the Uniform Commercial Code one cannot take an interest in proceeds without also taking an interest in the underlying collateral from which such proceeds are generated. To allow a security interest in proceeds alone would be very confusing to potential third parties. Under California law a secured party is secured in the proceeds of the collateral as well as the collateral itself. Cal.Com.Code § 9203(3). The right to specific collateral, absent the right to its proceeds, is not a particularly valuable right. Once collateral is liquidated, it becomes proceeds. To allow a prior security interest to attach only to proceeds would be to seriously mislead potential third parties who might extend credit on unencum-

---

1. Courts have generally refused to accept descriptions of collateral phrased in terms of all property or all assets. *In re DeSchamp*, 44 B.R. 517, 521 (N.Iowa 1984); *World Wide Tracers, Inc. v. Metropolitan Protection, Inc.*, 384 N.W.2d 442, 448 (Minn.S.Ct.1986). *Contra, Leasing Service Corp. v. American Nat. Bank & Trust Co.*, 19 UCC Rep. 252, 263 (D.N.J.1976); *In re Mitchell Bros. Const., Inc.*, 52 B.R. 92, 93 (W.Wis.1985). Such descriptions are studiously designed to cover everything and describe nothing. *Mammoth, supra*, 5 UCC Rep. at 16.

bered assets in the belief that under Cal. Com.Code § 9203(3), they were also secured in those same proceeds.

Yet this does not end our inquiry because First City contends that the existence of a financing statement, however imperfect, constitutes some notice to a prospective creditor.

### D. *Notice Filing Under the UCC*

The Uniform Commercial Code, as designed by its drafters and as adopted by the California legislature, was intended to be a notice filing system. Cal.Com.Code § 9402, Cal.Com.Code Comment, *supra,* at 158. However, it was not intended to be a pure notice filing system. The financing statement gives notice that the secured party who has filed it may have a security interest *in the collateral described.* Cal. Com.Code § 9402, Cal.Com.Code Comment, *supra,* at 158. If the collateral is not adequately described, no notice is given.

First City relies on the argument that because it filed a financing statement third parties could have inquired as to what collateral was covered. This argument would obviate any need to ever describe collateral. *In re Dubman,* 5 UCC Rep. 910, 915 (W.Mich.1968). For a court to ignore the requirement that collateral be described by type or item would be to disregard the clearly stated intent of the drafters of the Code and the legislature which adopted it. *In re Dubman, supra,* 5 UCC Rep. at 915.

■ The drafters of the UCC could have made it a pure notice statute. Then third parties would be required to make unlimited inquiries and investigations. *In re Kirk Kabinets, Inc.* 15 UCC Rep. 746, 750–751 (M.Ga.1974). We cannot hold at this late date that the drafters actually intended to make the UCC a pure notice statute. A certain degree of specificity in describing the collateral is required.

Therefore, for the reasons given above, we AFFIRM.